**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

TONI M.,[1]

                 Plaintiff,

v.

MARTIN J. O'MALLEY,[2]
Commissioner of the Social Security Administration,

                 Defendant.

Case No. 5:23-cv-00001-JMK

## DECISION AND ORDER

On or about September 2, 2020, Toni M. ("Plaintiff") protectively filed applications[3]

under Titles II and XVI of the Social Security Act.[4]  Plaintiff's initial alleged disability date

---

[1] Plaintiff's name is partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.  *See* MEMORANDUM, COMMITTEE ON COURT ADMINISTRATION AND CASE MANAGEMENT OF THE JUDICIAL CONFERENCE OF THE UNITED STATES (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] Martin J. O'Malley is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).  *See also* section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

[3] Administrative Record ("A.R.") A.R. 16, 191, 194.  The application summaries, not the applications themselves, appear in the Court's record and are dated September 3, 2020. A.R. 191.  Pursuant to 20 C.F.R. §§ 416.340–350, a protective filing date establishes the earliest possible application date based on a claimant's oral inquiry about eligibility or a verbal or written statement of intent to file for benefits.  Therefore, September 2, 2020, is considered Plaintiff's application filing date.

[4] Title II of the Social Security Act provides benefits to disabled individuals who are insured by virtue of working and paying Federal Insurance Contributions Act (FICA) taxes for a certain amount of time.  Title XVI of the Social Security Act is a needs-based program funded by general tax revenues designed to help disabled individuals who have low or no income.  Plaintiff brought claims under Title II and Title XVI.  Although each program is governed by a separate set of regulations, the regulations governing disability determinations are substantially the same for both programs.  *Compare* 20 C.F.R. §§ 404.1501–1599 (governing disability determinations under

was January 1, 2018, but she subsequently amended the date to April 13, 2020.[5]  Plaintiff

has exhausted her administrative remedies and filed a Complaint seeking relief from this

Court.[6]  Plaintiff's Opening Brief asks the Court to reverse and remand the agency's

decision for further administrative proceedings under sentence four of 42 U.S.C.

§ 405(g).[7]  The Commissioner filed the Administrative Record as his Answer and filed a

Response Brief.[8]  Plaintiff filed a Reply Brief.[9]

      Oral argument was not requested and was not necessary to the Court's decision.

This Court has jurisdiction to hear an appeal from a final decision of the Commissioner of

Social Security.[10]  For the reasons discussed below, Plaintiff's request for relief at

Docket 11 is GRANTED.

---

Title II) *with* 20 C.F.R. §§ 416.901–999d (governing disability determinations under Title XVI).  For
convenience, the Court cites the regulations governing disability determinations under both titles.

[5] A.R. 45.

[6] Docket 1 (Plaintiff's Compl.).

[7] Docket 11 (Plaintiff's Br.).

[8] Docket 10 (Notice of Lodging Admin. Record); Docket 13 (Commissioner's Br.).  As of
December 1, 2022, the Commissioner's "answer may be limited to a certified copy of the
administrative record."  *See* Fed. R. Civ. P., Supp. R. 4(b) of Soc. Sec. Actions under 42 U.S.C.
§ 405(g) (effective Dec. 1, 2022).

[9] Docket 14 (Reply).

[10] 42 U.S.C. § 405(g).

# I. STANDARD OF REVIEW

A decision by the Commissioner to deny disability benefits will not be overturned unless it either is not supported by substantial evidence or is based upon legal error.[11] "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[12] Such evidence must be "more than a mere scintilla," but may be "less than a preponderance."[13] In reviewing the agency's determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the administrative law judge ("ALJ")'s conclusion.[14] If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[15] A reviewing court may only consider the reasons provided by the ALJ in the disability determination and "may not affirm the ALJ on a ground upon which he did not rely."[16] An ALJ's decision will not be reversed if it is based on "harmless error," meaning that the error "is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision

---

[11] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

[12] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938)).

[13] *Id.*; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

[14] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

[15] *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citing *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

[16] *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

with less than ideal clarity."[17]  Finally, the ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered."[18]  In particular, the Ninth Circuit has found that the ALJ's duty to develop the record increases when the claimant is unrepresented or is mentally ill and thus unable to protect her own interests.[19]  However, this duty exists "even when the claimant is represented by counsel."[20]

## II.  DETERMINING DISABILITY

The Social Security Act ("the Act") provides for the payment of disability insurance benefits ("DIB") to individuals who have contributed to the Social Security program and who suffer from a physical or mental disability.[21]  In addition, Supplemental Security Income ("SSI") may be available to individuals who do not have insured status under the Act but who are age 65 or older, blind, or disabled.[22]  Disability is defined in the Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[23]

---

[17] *Brown-Hunter v. Colvin,* 806 F.3d 487, 492 (9th Cir. 2015) (internal quotations and citations omitted).

[18] *Smolen v. Chater,* 80 F.3d 1273,1288 (9th Cir. 1996) (quoting *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 1983)), *superseded on other grounds by* 20 C.F.R. § 416.929(c)(3) and § 404.1529(c)(3); *see also Garcia v. Comm'r of Soc. Sec.,* 768 F.3d 925, 930 (9th Cir. 2014).

[19] *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001).

[20] *Mayes v. Massanari,* 276 F.3d 453, 459 (9th Cir. 2001) (citations omitted).

[21] 42 U.S.C. § 423(a).

[22] 42 U.S.C. § 1381a.

[23] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Case No. 5:23-cv-00001-JMK, *Toni M. v. O'Malley*
Decision and Order
Page 4 of 31
Case 5:23-cv-00001-JMK   Document 15   Filed 02/27/24   Page 4 of 31

The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[24]

The Commissioner has established a five-step process for determining disability within the meaning of the Act.[25]  A claimant bears the burden of proof at steps one through four in order to make a prima facie showing of disability.[26]  If a claimant establishes a prima facie case, the burden of proof then shifts to the agency at step five.[27]  The Commissioner can meet this burden in two ways:  "(a) by the testimony of a vocational expert, *or* (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."[28]  The steps, and the ALJ's findings in this case, are as follows:

**Step 1.**  Determine whether the claimant is involved in "substantial gainful activity" ("SGA").[29]  *The ALJ determined that Plaintiff had not engaged in SGA since April 13,*

---

[24] 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

[25] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[26] *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); s*ee also Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

[27] *Treichler*, 775 F.3d at 1096 n.1; *Tackett*, 180 F.3d at 1098 (emphasis in original).

[28] *Tackett*, 180 F.3d at 1101.

[29] 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

*2020, the amended alleged onset date. The ALJ also determined that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2023.*[30]

**Step 2.** Determine whether the claimant has a medically severe impairment or combination of impairments. A severe impairment significantly limits a claimant's physical or mental ability to do basic work activities and does not consider age, education, or work experience. The severe impairment or combination of impairments must satisfy the twelve-month duration requirement.[31] *The ALJ determined that Plaintiff had the following severe impairments: liver failure and alcoholic cirrhosis of the liver with ascites; degeneration of the nervous system due to alcohol with alcoholic peripheral neuropathy and paresthesia; cognitive impairment; Korsakoff's syndrome; cognitive communication disorder; schizoaffective disorder; adjustment disorder with mixed anxiety and depressed mood; anxiety; attention deficit hyperactivity disorder ("ADHD"); and alcohol use disorder and dependence with persisting amnestic and alcohol-induced dementia.*[32]

**Step 3.** Determine whether the impairment or combination of impairments meet(s) or equal(s) the severity of any of the listed impairments found in 20 C.F.R. pt. 404, subpt. P, app.1, precluding substantial gainful activity. If the impairment(s) is(are) the equivalent of any of the listed impairments, and meet(s) the duration requirement, the claimant is conclusively presumed to be disabled. If not, the evaluation goes on to the

---

[30] A.R. 19.

[31] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[32] A.R. 19–20.

fourth step.[33]  *The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.*[34]

    <u>Residual Functional Capacity.</u>  Before proceeding to step four, a claimant's residual functional capacity ("RFC") is assessed.[35]  Once determined, the RFC is used at both step four and step five.  An RFC assessment is a determination of what a claimant is able to do on a sustained basis despite the limitations from her impairments, including impairments that are not severe.[36]  *The ALJ determined that Plaintiff had the residual functional capacity to perform medium work with the following limitations:  frequently climbing stairs and ramps; never climbing ladders, ropes, and scaffolds; frequently stooping, kneeling, crouching, and crawling; avoiding concentrated exposure to vibrations; and avoiding all exposure to hazards such as unprotected heights, moving mechanical parts, and commercial driving.  The ALJ also determined that Plaintiff could perform simple, routine and repetitive tasks, but could not perform tasks which require a high production rate pace (such as assembly line work); could make only simple work-related decisions; should not be responsible for the safety or welfare of others; and could respond appropriately to occasional changes in a routine and relatively static work setting,*

---

[33] 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[34] A.R. 20.

[35] 20 C.F.R. § 416.945.

[36] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

*as long as any such changes are easily explained and/or demonstrated in advance of gradual implementation.*[37]

**Step 4.** Determine whether the claimant is capable of performing past relevant work. At this point, the analysis considers whether past relevant work requires the performance of work-related activities that are precluded by the claimant's RFC. If the claimant can still do her past relevant work, the claimant is deemed not to be disabled.[38] Otherwise, the evaluation process moves to the fifth and final step.[39] *The ALJ determined that Plaintiff was unable to perform any past relevant work.*[40]

**Step 5.** Determine whether the claimant is able to perform other work in the national economy in view of her age, education, and work experience, and in light of the RFC. If so, the claimant is not disabled. If not, the claimant is considered disabled.[41] *The ALJ found that Plaintiff would have been able to perform occupations such as cleaner (DOT # 381.687-018), automobile detailer (DOT # 915.687-034), and routing clerk (DOT # 222.687-022).*[42]

The ALJ concluded that Plaintiff was not disabled at any time from April 13, 2020, the amended alleged onset date, through June 6, 2022, the date of the ALJ's decision.[43]

---

[37] A.R. 22.

[38] 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[39] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

[40] A.R. 28.

[41] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

[42] A.R. 29–30.

[43] A.R. 30.

## III. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff was 44 years old on the amended alleged disability date.[44] From the amended alleged onset date through the date of the ALJ's decision, she was considered "a younger individual" (age 18–49) by the Social Security Administration.[45] Her past relevant work included work as a waitress.[46] Plaintiff initially alleged disability due to cirrhosis of the liver and hepatic encephalopathy.[47] She also reported she was unable to work due to memory issues.[48] Plaintiff's claims were denied initially on October 13, 2020, and after reconsideration on March 31, 2021.[49] On January 7, 2022, she appeared with representation and testified by telephone before ALJ Michael F. Schmitz.[50] Through her attorney, Plaintiff amended her alleged onset date of disability to April 13, 2020, to "coincide" with her cognitive decline.[51] The ALJ issued an unfavorable hearing decision dated June 6, 2022.[52] After the Appeals Council denied review on March 23, 2023, Plaintiff timely appealed to this Court.[53]

---

[44] A.R. 29, 191.

[45] *See* 20 C.F.R. §§ 404.1563, 416.963.

[46] A.R. 28.

[47] A.R. 211.

[48] A.R. 262–63.

[49] A.R. 70–71, 80–81.

[50] A.R. 46–60. The ALJ noted that the hearing was being held by telephone "because of the COVID-19 pandemic." A.R. 39.

[51] A.R. 45.

[52] A.R. 16–30.

[53] A.R. 1–6. Plaintiff filed her complaint on May 22, 2023. *See* Docket 1.

Case No. 5:23-cv-00001-JMK, *Toni M. v. O'Malley*
Decision and Order
Page 9 of 31

# IV.   DISCUSSION

Plaintiff is represented by counsel in this appeal.  Plaintiff alleges:  (1) that the ALJ's weighing of the medical opinions in the record was not supported by substantial evidence; (2) the ALJ failed to specific, clear, and convincing reasons for rejecting Plaintiff's symptom allegations; (3) the ALJ failed to resolve an apparent conflict with the Dictionary of Occupational Titles; and (4) the ALJ's conclusion that Plaintiff's alcohol use is a contributing factor material to a determination of disability is not supported by the record.[54]  The Commissioner disagrees and urges the Court to affirm.[55]

## A.   Medical Opinion Evidence

Plaintiff alleges that the ALJ did not adequately evaluate the persuasiveness of the medical opinions of record.  Specifically, she asserts that the ALJ's analysis of the medical opinions of Danelle Fields, Ph.D., and Chelsea Meng, Psy. D., was not supported by substantial evidence.[56]  Because Plaintiff protectively filed her applications on or about September 2, 2020, the new regulations governing the evaluation of medical evidence are applicable here.

### 1.   Legal standard

Under the new regulations in effect March 27, 2017, the definition of what constitutes a medical opinion has been narrowed, focusing on what the claimant can do

---

[54] Docket 11 at 7–19.

[55] Docket 13 at 2–10.

[56] Docket 11 at 7–10.

Case No. 5:23-cv-00001-JMK, *Toni M. v. O'Malley*
Decision and Order
Page 10 of 31
Case 5:23-cv-00001-JMK   Document 15   Filed 02/27/24   Page 10 of 31

despite her impairments and what work-related limitations are present.[57]  The new

regulations define a medical opinion as follows:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities:
>
> (i)    Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (ii)    Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (iii)    Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (iv)    Your ability to adapt to environmental conditions, such as temperature or fumes.[58]

The new regulations further provide that the ALJ no longer gives any particular

weight to a medical opinion based on its source, thereby eliminating the treating source

rule.[59]  Instead, the ALJ considers the persuasiveness of a medical opinion based on five

factors:  (1) supportability; (2) consistency; (3) relationship with the claimant, including

length, extent, and type of treatment; (4) specialization; and (5) other relevant factors that

support or contradict the medical opinion.[60]

---

[57] *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1513(a)(2).

[58] 20 C.F.R. § 404.1513(a)(2).

[59] *Revisions to Rules Regarding the Evaluation of Medical Evidence,* 82 Fed. Reg. 5844-01 (Jan. 18, 2017), 2017 WL 168819, at *5867–68; 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (for claims filed on or after March 27, 2017).

[60] 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

Supportability and consistency are considered the most important factors for evaluating persuasiveness.[61]  Supportability and consistency are explained as follows in the regulations:

> (1)  Supportability.  The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2)  Consistency.  The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.[62]

Generally, these are the only two factors the ALJ is required to address in his decision.[63]  However, when two or more medical opinions or prior administrative medical findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ must explain how "the other most persuasive factors" were considered.[64]  In the Ninth Circuit, the new regulatory framework no longer requires ALJs to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining medical source's opinion.[65]

---

[61] The regulations state, "The factors of supportability . . . and consistency . . . are the most important factors [the SSA] consider[s] when [the SSA] determine[s] how persuasive [the SSA] find[s] a medical source's medical opinions or prior administrative medical findings to be." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (for claims filed on or after March 27, 2017).

[62] 20 C.F.R. §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2).

[63] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.").

[64] 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (for claims filed on or after March 27, 2017).

[65] *Woods v. Kijakazi,* 32 F.4th 785 (9th Cir. 2022).

## 2. Medical opinion of Danelle Fields, Ph.D.

Beginning in June 2021 through April 2022, Plaintiff saw Danelle Fields, Ph.D., regularly for psychiatric care. On November 6, 2021, Dr. Fields opined that Plaintiff's impairments included neurodegenerative disease of the central nervous system, adjustment disorder with anxiety and depressed mood, ADHD, and alcohol use disorder in remission. She opined that Plaintiff's progress had been fair to moderate and that Plaintiff's short-term memory may improve after five years of abstinence from alcohol. However, she also opined that a full recovery of Plaintiff's memory and executive abilities was unlikely.[66]

Dr. Fields assessed functional limitations in several areas. She opined that Plaintiff's ability to remember information and concentrate were markedly impaired and she would be unable to meet competitive standards for remembering work-like procedures; understanding and remembering very short and simple instructions; and maintaining attention for a two-hour segment. She also opined that Plaintiff would be unable to meet competitive standards for traveling in unfamiliar places and using public transportation.[67]

Dr. Fields discussed Plaintiff's neuropsychological evaluation conducted in December 2020 by a different provider. This previous evaluation indicated that Plaintiff's visual recall, encoding of verbal information, and recall and recognition were impaired. The evaluation also noted Plaintiff's difficulty with organization, learning a new routine,

---

[66] A.R. 2081.

[67] A.R. 2082–84.

Case No. 5:23-cv-00001-JMK, *Toni M. v. O'Malley*
Decision and Order
Page 13 of 31

Case 5:23-cv-00001-JMK    Document 15    Filed 02/27/24    Page 13 of 31

and managing stress. Dr. Fields provided additional evidence from her own treatment notes, including Plaintiff's inability to recall information given at the beginning of a therapy session, retrieve information about current events, remember details, and remember homework assignments. Dr. Fields also noted changed behaviors from the past, including a reluctance to participate in activities and making impulsive purchases. She discussed Plaintiff's need to use a phone with GPS to find her way to stores and her fear of driving because she feels she would be unsafe. Dr. Fields opined that Plaintiff would be absent from work for about two days per month and opined that Plaintiff was not capable of managing benefits in her own interest.[68]

On April 1, 2022, Dr. Fields provided an opinion letter to Plaintiff's attorney. She stated, "[p]lease note that my role is therapeutic, so by the nature of that role, my observations are biased to advocate for my patient." Dr. Fields opined that Plaintiff had "improved somewhat" from the neuropsychological evaluation completed in December 2020. Despite this improvement, Dr. Fields opined that Plaintiff "continue[d] to struggle." She pointed out incidents demonstrating Plaintiff's memory problems, lack of organization, impulsivity, inability to tolerate stress, problems navigating around town, and difficulties controlling emotions. She opined again that Plaintiff's memory may improve after five years of abstinence, but that Plaintiff's memory and executive functions were unlikely to fully recover.[69]

---

[68] A.R. 2083–85.

[69] A.R. 2501–02.

Plaintiff asserts that the ALJ failed to articulate how he considered the supportability and consistency factors to find Dr. Fields's medical opinions unpersuasive.[70]  The Commissioner contends that Plaintiff's improvement with conservative treatment undermines Dr. Fields's opinion that Plaintiff's impairments caused ongoing marked functional limitations.  The Commissioner also asserts that Plaintiff did not challenge the ALJ's determination that Dr. Fields's bias rendered her opinions unpersuasive.[71]

We are confined to reviewing the reasons the ALJ asserts.[72]  In this case, the ALJ provided the following reasons for finding Dr. Fields's opinions unpersuasive.  First, the ALJ concluded that Dr. Fields's opinions were "not supported by the record as a whole."  Next, the ALJ found that Dr. Fields's medical opinions were unpersuasive because Plaintiff was "able to attend to her activities of daily living, travel on her own to locations in her neighborhood, and has been found to have normal intelligence."  Finally, the ALJ found Dr. Fields's opinions unpersuasive because Dr. Fields admitted that she was advocating for Plaintiff.[73]

A reviewing court should "not fault the agency merely for explaining its decision with 'less than ideal clarity,'" however, "we still demand that the agency set forth the

---

[70] Docket 11 at 8–10.

[71] Docket 13 at 5.

[72] *Brown-Hunter,* 806 F.3d at 494 ("As we have long held, we are constrained to review the reasons the ALJ asserts.") (quotations, citations, and emphasis omitted).

[73] A.R. 27–28.

reasoning behind its decisions in a way that allows for meaningful review."[74]  Although the ALJ summarized Dr. Fields's treatment notes earlier in his decision, the ALJ did not explain which portions of the medical record conflicted with Dr. Fields's opinions about Plaintiff's functional limitations resulting from Plaintiff's psychological symptoms.  This alone constitutes error because the ALJ failed to "set forth his own interpretations and explain why they, rather than the doctors', are correct."[75]

Further, the treatment records and psychological examinations, when read in context, do not appear to provide an adequate basis for discrediting Dr. Fields's opinions, particularly regarding Plaintiff's memory problems, lack of organization, impulsivity, inability to tolerate stress, problems navigating around town, and difficulties controlling emotions.[76]

Moreover, the ALJ adopts an incomplete view of the record to support his conclusions that Plaintiff's activities of daily living, traveling on her own to locations in her neighborhood, and normal intelligence are inconsistent with Dr. Fields's medical

---

[74] *Brown-Hunter,* 806 F.3d at 492 (quoting *Treichler,* 775 F.3d 1090, 1099 (9th Cir. 2014)).

[75] *See Embrey v. Bowen,* 849 F.2d 418, 21–22 (9th Cir. 1988).

[76] *See e.g.,* A.R. 2471 (Plaintiff was oriented to person, place, and situation, but not time.  She has trouble maintaining the order of activities in her life.  She is repetitive.); 2473 ("Her boyfriend wants to be part of the next session because she cannot remember what we discuss."); 2476 (She struggles with time and ordering.  She was repetitive.); 2478–79 (Plaintiff had engaged in impulsive purchases; "problems remembering what she ate"; needs to have her GPS to walk to Walgreens.  She was oriented to person, place and situation, but not time.  She was unable to recall 3 words at 5 minutes and 45 minutes.); 2480–81 (Forgetful and repetitive; poorly oriented to time; reported can still cook, clean, and read); 2484–85 (No real insight into her condition from not remembering being in the hospital; struggling with the changes she has in her daily life).

opinions.[77]  While Plaintiff reported to providers that she was able to complete household tasks such as cooking, cleaning, and doing laundry, she also reported that her boyfriend managed her finances and medications, she chose not to drive, she felt she could not walk around her neighborhood for fear of getting lost, she required a GPS to walk to Walgreens in her neighborhood, had a difficult time remembering what she cooked or ate the day before, and had difficulty keeping track of the date, recalling plans for the next day, and remembering past events, such as her hospitalization in April 2020.[78]

And, although Dr. Fields used the words "bias" and "advocate" in her opinion letter, her opinions and functional assessments regarding Plaintiff's memory problems are supported by her own treatment notes and consistent with the overall record, including the examination by Jagan Pillai, M.D.,[79] and testing by DeAnna Frye, Ph.D.[80]  Moreover, Dr. Fields did not state that she was involved in assisting with Plaintiff's application.[81]

Finally, the Commissioner's argument that Plaintiff's memory and cognitive problems improved with medication and psychological care is not supported by

---

[77] *Buethe v. Comm'r of Soc. Sec.,* No. 2:20-cv-552-KJN, 2021 WL 1966202, at *5 (E.D. Cal. May 17, 2021) ("Recently, . . . numerous district courts across the country have remanded where evidence supporting or consistent with a rejected medical opinion was ignored.") (citing cases).

[78] *See e.g.,* A.R. 2067, 2195, 2213, 2471, 2476, 2478–79, 2480.

[79] A.R. 1973–77.

[80] A.R. 2059–64.

[81] *Kelly Dawn L v. Saul,* No. 1:19-cv-3091-FVS, 2020 WL 4730734, at *10 (E.D. Wash. May 27, 2020) ("When a physician is involved in the application process and advocates for the patient, the physician's opinion may be rejected because it is not objective.") (citing *Crane v. Shalala,* 76 F.3d 251, 254 (9th Cir. 1996)); *Matney on Behalf of Maney v. Sullivan,* 981 F.2d 1016, 1020 (9th Cir. 1992) (affirming ALJ's finding that physician's opinion was entitled to less weight because he agreed to become an advocate and assist in the application process).

substantial evidence.[82]  While some of the treatment records cited by the Commissioner showed improvement regarding Plaintiff's memory problems through therapy and medications, this improvement did not rise to any level of significant control.[83]

In sum, the ALJ's finding that Dr. Fields's opinions were unpersuasive is not supported by substantial evidence.

### 3.    Medical opinion of Dr. Meng

On April 29, 2022, Plaintiff underwent a neuropsychological assessment by Chelsea Meng, Psy.D., a neuropsychologist.  Dr. Meng reviewed Plaintiff's social history, reported memory problems, diagnostic studies, behavioral observations, and administered several neuropsychological tests.  Based on testing, she concluded that Plaintiff continued to be impaired in the areas of memory and executive function when compared to her previous evaluation in December 2020, including significant impairments in her verbal and visual memory; learning and encoding new information; storing new information in long term memory; and problems with confabulation and problem solving. Dr. Meng also noted that Plaintiff's impairments appeared to be related to her episode of encephalopathy in April 2020 and significant history of alcohol abuse.  She opined that Plaintiff's cognitive deficits appeared consistent with Korsakoff's syndrome.[84]  Dr. Meng

---

[82] *Garrison,* 759 F.3d at 1017 n.23 ("There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce[.]") (internal quotations and citation omitted).

[83] *See e.g.,* A.R. 1973, 1978–79, 2167, 2195, 2377.

[84] "Wernicke-Korsakoff syndrome is an unusual type of memory disorder due to a lack of thiamin (vitamin B1) requiring immediate treatment.  It most often happens in people with alcohol use disorder and malnutrition."  *See* https://my.clevelandclinic.org/health/diseases/22687-wernicke-korsakoff-syndrome.

concluded that Plaintiff's "cognitive abilities have remained unchanged since her evaluation in 2020 and are unlikely to improve. The severity of her memory problems will impact her ability to work, and she should continue to pursue social security disability."[85]

The ALJ determined that Dr. Meng's opinion was "generally persuasive, as it is largely supported by exam findings and is overall consistent with the record." The ALJ then discounted the opinion because it was "rather vague in nature and does not specifically identify functional limitations."[86]

Plaintiff asserts that the ALJ failed to provide reasons supported by substantial evidence for rejecting Dr. Meng's medical opinion. She asserts that the opinion is supported by and consistent with the record, as well as being consistent with the opinion of Dr. Fields. She points out specifically that the ALJ "identified no contrary medical evidence to reject Dr. Meng's opinion."[87] The Commissioner counters that the RFC developed by the ALJ incorporated Dr. Meng's opinion, but the ALJ did not include Dr. Meng's recommendation that Plaintiff "continue to follow-up with her application for social security disability" because this statement by Dr. Meng was not a "medical opinion" under the SSA regulations.[88]

---

[85] A.R. 2503–08.

[86] A.R. 28.

[87] Docket 11 at 9.

[88] Docket 13 at 6.

Case No. 5:23-cv-00001-JMK, *Toni M. v. O'Malley*
Decision and Order
Page 19 of 31

An ALJ may reject a medical opinion regarding a claimant's ability to return to work as an issue reserved for the Commissioner. Specifically, the new SSA regulation after March 27, 2017, provides in § (c)(3):

> (3) Statements on issues reserved to the Commissioner. The statements listed in paragraphs (c)(3)(i) through (c)(3)(viii) of this section would direct our determination or decision that you are or are not disabled or blind within the meaning of the Act, but we are responsible for making the determination or decision about whether you are disabled or blind:

> (i) Statements that you are or are not disabled, blind, able to work, or able to perform regular or continuing work;[89]

Moreover, courts in the Ninth Circuit have recognized that the definition of "medical opinion" under the new regulations requires that the opinion include both functional limitations and what a claimant is still capable of doing."[90] Similarly, the ALJ may find a

---

[89] 20 C.F.R. §§ 404.1520b(c)(3)(i), 416.920b(c); *see also Rokko M. v. Comm'r of Soc. Sec.,* No. 2:22-CV-29-DWC, 2022 WL 4482625, at *2 (W.D. Wash. Sept. 27, 2022) ("[A]n ALJ need not provide analysis if the evidence is 'neither valuable nor persuasive to the issue,' such as decisions [']by other governmental agencies and nongovernmental entities,' and 'statements on issues reserved to the Commissioner.'" (quoting 20 C.F.R. § 416.920b(c)(1)–(2))); *Susan F. v. Kijakazi,* No. 20-CV-2201-BAS-DEB, 2022 WL 1694460, at *4 (S.D. Cal. May 26, 2022) ("[T]he opinion that [the plaintiff] is unable to work is not a medical opinion, but is an opinion about an issue reserved for the Commissioner." (quoting *Martinez v. Astrue,* 261 F. App'x. 33, 35 (9th Cir. 2007))).

[90] *See* 20 C.F.R. § 404.1513(a)(2) ("A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities."); *Rodin v. Comm'r of Soc. Sec.,* No. 1:21-CV-00900-SAB, 2023 WL 3293423, at *15 (E.D. Cal. May 5, 2023) (citing *Jessie L. v. Kijakazi,* No. 20-CV-9305-DMR, 2022 WL 2222964, at *14 (N.D. Cal. June 21, 2022) ("In revising the definition of 'medical opinion,' the SSA recognized that '[d]iagnoses and prognoses do not describe how an individual functions' and that although the SSA considers a claimant's statements about his or her symptoms, '[a] more appropriate focus of medical opinions would be perspectives from medical sources about claimants' functional abilities and limitations.'" (quoting 81 Fed. Reg. at 62,562)). "Thus, a 'medical opinion' must discuss both a claimant's limitations and 'what [the claimant] is still capable of doing' despite those limitations." *Jessie L.,* 2022 WL 2222964, at *14 (quoting *Michael H. v. Saul,* 5:20-CV-417 (MAD), 2021 WL 2358257, at *6 (N.D.N.Y. June 9, 2021)); *see also Michael H.,* 2021 WL 2358257, at *6 ("This note presents a close call on what is considered a medical source statement[;] [w]hile it discusses Plaintiff's limitations, it does not discuss what Plaintiff is still capable of doing [and] [u]nder the previous

---

medical opinion unsupported if the opinion fails "to assess any functional limitations."[91] However, the Court is not required to "take an all-or-nothing approach, and [may] attempt to extract portions of records that do qualify as medical opinions, from portions that may touch upon an issue reserved for the Commissioner."[92]

In this case, the ALJ considered Dr. Meng's opinion generally persuasive and correctly discounted the opinion for lacking specific functional limitations. The ALJ properly analyzed and considered Dr. Meng's medical opinion. However, because this case is being remanded on other grounds, the ALJ also should reevaluate Dr. Meng's opinion to ensure that all of Plaintiff's limitations are accounted for in the new decision.

---

regulations, what a plaintiff could do in spite of their impairments was just one of the listed factors tending to establish the medical provider's judgments about the nature and severity of the plaintiff's impairments . . . [h]owever, under the new regulations, a medical source opinion must do both.")).

[91] *Pernell v. Kijakazi*, No. 21-35619, 2022 WL 1638815 (9th Cir. May 24, 2022) (finding substantial evidence supported the ALJ's decision to discount the opinion of a psychologist who relied on an outdated diagnostic framework and "failed to assess any functional limitations"); *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (ALJ permissibly discounted a physician's opinion, under prior precedent governing the evaluation of medical opinions, where the descriptions in the opinion of the claimant's "ability to perform in the workplace as 'limited' or 'fair' were not useful because they failed to specify [the claimant's] functional limits."); *McLeod v. Astrue*, 640 F.3d 881, 884–85 (9th Cir. 2011), *superseded on other grounds by 20 C.F.R. § 404.1504* (Where the physician's opinion merely stated that the claimant "could not work," the ALJ is not required to read this as an evaluation of the claimant's "functional exertional capacity.").

[92] *Rodin v. Comm'r of Soc. Sec.,* 2023 WL 3293423, at *14; *see also* 20 C.F.R. § 404.1513(a)(3) ("Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis. (For claims filed (see § 404.614) before March 27, 2017, other medical evidence does not include a diagnosis, prognosis, or a statement that reflects a judgment(s) about the nature and severity of your impairment(s)).").

**B.    Plaintiff's Subjective Symptom Testimony and Reports**

Plaintiff contends that the ALJ failed to articulate specific, clear, and convincing reasons for rejecting her testimony.   Specifically, Plaintiff asserts that the ALJ's "proposition that her memory improved to a point of sustained functioning is not supported by the record."   She also asserts that the ALJ did not cite any evidence indicating normal memory.[93]   The Commissioner counters that "Plaintiff does not dispute that her treatment after a hospitalization was conservative, which is itself a legally sufficient reason for discounting her self-reports."   In the alternative, the Commissioner asserts that the ALJ rationally concluded Plaintiff's limitations were not a severe as she alleged.[94]

Plaintiff testified before ALJ Schmitz on January 7, 2022.  She testified that she felt she could not work because of her memory problems.   She indicated that she could typically maintain her day-to-day living, but she also stated that she did not drive and if she needed to get to a doctor's appointment or grocery store, she was completely dependent on her boyfriend.  She testified that she "misplace[s] everything[,]" but that she had a few systems in place to assist her with her memory.   She stated that it was "very hard for [her] to do anything on a consistent basis," including keeping track of her medical appointments and medication.   She testified that her "time and space memory" was impaired, so she had difficulties knowing what day of the week it was or the date.  She indicated that she did not know how long she could do an activity before moving on to another activity.  Plaintiff testified that she and her boyfriend have pets, but her boyfriend

---

[93] Docket 11 at 13.

[94] Docket 13 at 3–4.

took care of the animals' daily feedings and other needs. She testified that, at the time of the hearing, she was not drinking alcohol. She indicated that she did not know the last time she had something to drink, but that she had not attended a cessation program. Plaintiff also indicated that she could not remember what she did on specific days. She testified that she could not do laundry and that her boyfriend organized the household, her medications, and paid the bills. She indicated that she could walk to her neighborhood Walgreens and back with the assistance of GPS, but she did not believe that she could walk there without the GPS.[95]

### 1.    Legal standards

An ALJ's assessment of a claimant's symptoms has two steps.[96] First, the ALJ determines whether the claimant has presented "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[97] In the first step, the claimant need not show "that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof."[98]

---

[95] A.R. 49–59.

[96] *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

[97] *Id.* (quoting *Garrison v. Colvin,* 759 F.3d 995, 1014–15 (9th Cir. 2014)).

[98] *Garrison,* 759 F.3d at 1014 (internal citations and quotations omitted).

Second, if the claimant has satisfied step one and the ALJ has determined that the claimant is not malingering, the ALJ must provide "specific, clear and convincing reasons" for rejecting the claimant's testimony regarding the severity of the claimant's symptoms. This standard is "the most demanding required in Social Security cases."[99] Yet, this does not mean an ALJ is required to "simply accept a claimant's subjective symptom testimony notwithstanding inconsistencies between that testimony and the other objective medical evidence in the record, allowing a claimant's subjective evidence to effectively trump all other evidence in a case."[100]

In this case, the ALJ determined that, although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. He did not determine that Plaintiff was malingering.[101]

Because the ALJ found Plaintiff's underlying impairments severe and cited no evidence of malingering, he was required to provide specific, clear, and convincing reasons for rejecting Plaintiff's subjective symptom allegations. The ALJ provided the following reasons: (1) Plaintiff has required only conservative treatment since her hospitalizations in 2020 and the objective evidence shows a good physical recovery after

_____

[99] *Trevizo,* 871 F.3d at 678.

[100] *Smartt v. Kijakazi,* 53 F. 4th 489, 499 (9th Cir. 2022).

[101] A.R. 23.

cessation of alcohol consumption; and (2) regarding memory and cognitive problems, Plaintiff "has made good progress with medication and psychological care."[102]

Because Plaintiff has not objected to the ALJ's findings regarding her physical impairments, the Court will not address those findings. Regarding Plaintiff's cognitive and other mental impairments, some treatment records showed improvement, but not to any level of significant control.[103]

In sum, the ALJ's examples of Plaintiff's general improvement were not sufficiently specific, clear, or convincing and were not supported by substantial evidence.[104]

## C. Apparent Conflict with the DOT

Under Social Security Ruling ("SSR") 00-4p, the ALJ has an "affirmative responsibility" to ask whether a vocational expert's evidence "conflicts with information provided in the DOT" before relying on that evidence to support a determination of nondisability.[105] However, the ALJ may rely on vocational expert testimony that

---

[102] A.R. 26.

[103] *See e.g.,* A.R. 1973, 1978–79, 2167, 2195, 2377.

[104] *Smartt,* 53 F.4th at 499–500.

[105] POLICY INTERPRETATION RULING: TITLES II AND XVI: USE OF VOCATIONAL EXPERT AND VOCATIONAL SPECIALIST EVIDENCE, AND OTHER RELIABLE OCCUPATIONAL INFORMATION IN DISABILITY DECISIONS, SSR 00-4p, 2000 WL 1898704, at *4. Social Security Rulings are issued by the Commissioner to clarify the Commissioner's regulations and policies. *Bunnell v. Sullivan,* 947 F.2d 341, 346 n.3 (9th Cir. 1991). Although they do not have the force of law, they are nevertheless given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen,* 882 F.2d 1453, 1457 (9th Cir. 1989); *see Orn v. Astrue,* 495 F.3d 625, 636 (9th Cir. 2007) (Social Security Rulings are "binding on all components of the Social Security Administration, . . . and are to be relied upon as precedents in adjudicating cases."); *see also Massachi v. Astrue,* 486 F.3d 1149, 1152–53 (9th Cir. 2007).

"contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation."[106]

Here, Plaintiff alleges that the ALJ failed to resolve an apparent conflict between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT"). Specifically, she asserts that the limitation of only occasional changes and a static work setting is an apparent conflict with the DOT's reasoning level two classification and the ALJ failed to resolve the conflict.[107] The Commissioner contends that the Court should affirm the ALJ's step-five finding because no apparent conflict exists between Plaintiff's limitations and the job demands at reasoning level two.[108]

The ALJ's hypothetical question posed to the vocational expert included mental limitations.[109] Based on the hypothetical, the vocational expert testified that Plaintiff could perform work as a cleaner (DOT # 381.687-018), an automobile detailer (DOT # 915.687-034), and a routing clerk (DOT # 222.687-022).[110] Each of these hypothetical occupations require a reasoning level two in the DOT.

The DOT "assigns each job a 'reasoning development' level, on a six-tiered scale of Level One (simplest) to Level Six (most complex)."[111] The two reasoning development levels at issue here are:

---

[106] *Johnson v. Shalala,* 60 F.3d 1428, 1435 (9th Cir. 1995).

[107] Docket 11 at 14–17.

[108] Docket 13 at 7–9.

[109] A.R. 62.

[110] A.R. 63.

[111] *Leach v. Kijakazi,* 70 F.4th 1251, 1256 (9th Cir. 2023) (citation omitted).

LEVEL 1[:] Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

LEVEL 2[:] Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.[112]

Recently, in *Leach v. Kijakazi,* the Ninth Circuit addressed level one and level two reasoning occupations. The Ninth Circuit emphasized the distinction between level one and level two reasoning jobs as follows:

Most pertinently, level-one jobs require only 'simple one-or two-step instructions' but level-two jobs require 'detailed but uninvolved . . . instructions.' . . . Both reasoning levels require simple (or 'uninvolved') instructions. . . . The key distinction between those two levels is that level-one jobs require instructions involving at most two steps, whereas level-two jobs may require 'detailed'—that is, potentially longer—instructions. . . . A level-two job with 'detailed but uninvolved . . . instructions' could require an employee to follow *lengthy* simple instructions. On the present record, then, we cannot determine whether the level-two jobs identified by the vocational expert require only *short*, simple instructions.[113]

Here, the ALJ's RFC does not directly address the complexity of instructions. Instead, the RFC limits Plaintiff to "simple, routine and repetitive tasks" with no assembly line work. Additionally, the ALJ noted that any changes to Plaintiff's work routine must be "easily explained and/or demonstrated" and must be explained "in advance of gradual implementation."[114]

---

[112] *Leach,* 70 F.4th at 1256 (internal citations omitted); *see also* DICOT 382.687-018, 1991 WL 673258; DICOT 915.687-034, 1991 WL 687878; DICOT 222.687-022.

[113] *Leach,* 70 F.4th at 1256–57.

[114] A.R. 22.

In the Ninth Circuit, a limitation to "simple, routine, repetitive tasks" has been found to be characteristic of level two reasoning.[115]  However, the ALJ in this case further limited Plaintiff to "simple work-related decisions" and "occasional change[s] in a routine and relatively static work setting," with "easily explained and/or demonstrated" changes "in advance of gradual implementation."[116]  This further eroding of level two reasoning implies that the RFC does not fit the hypothetical occupations testified to by the vocational expert and included at step five in the ALJ's disability evaluation.[117]  Because reasoning level one appears to better fit the ALJ's RFC, a conflict exists between the vocational expert's testimony and the DOT, which the ALJ did not resolve in his decision.  This conflict is not harmless.[118]  On remand, the ALJ should specifically address the conflict and, if necessary, recall the vocational expert for additional questioning and clarification.

---

[115] *Michelle G. v. Berryhill,* No. 18CV1323-DMS(MSB), 2019 WL 3322405, at *10 (S.D. Cal. July 24, 2019*), report and recommendation adopted sub nom. Gold v. Berryhill*, No. 18-CV-1323 DMS (MSB), 2019 WL 3891092 (S.D. Cal. Aug. 19, 2019) ("Plaintiff . . . is limited to simple, routine, repetitive tasks, which are more characteristic of Level 2 Reasoning[.]"); *see also Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015) (noting that the claimant's "limitation to simple, routine tasks is at odds with Level 3's requirements because 'it may be difficult for a person limited to simple, repetitive tasks to follow instructions in 'diagrammatic form' as such instructions can be abstract.'").

[116] A.R. 22.

[117] *Steven Rodney C. v. Comm'r, Soc. Sec. Admin.,* No. 2:20-cv-01753-YY, 2022 WL 1469228, at *2–3 (D. Or. May 10, 2022) (holding that when simple, routine tasks are further limited to no more than occasional changes and occasional decision making in the work setting, this RFC more closely aligns with level one reasoning).

[118] *Rounds v. Comm'r Soc. Sec. Admin.,* 807 F.3d 996, 1004 (9th Cir. 2015) (holding that the apparent conflict between the RFC and the demands of level two reasoning was not harmless).

**D.    Materiality of Alcohol Abuse**

Plaintiff alleges that the ALJ erred by finding Plaintiff's alcohol abuse material to her disability.[119]  The Commissioner responds, in a footnote, that because the ALJ never found Plaintiff disabled even in the context of her alcohol abuse, the ALJ did not address the materiality of Plaintiff's alcohol abuse on her impairments.[120]

Under the SSA's regulations, if the ALJ finds that there is medical evidence of alcoholism *and that the claimant is disabled when considering all impairments, including the alcoholism,* the ALJ must determine whether the "alcoholism is a contributing factor material to the determination of disability."[121]  The key factor is whether the claimant would still be found disabled if she stopped using alcohol.[122]  Therefore, the claimant's alcohol addiction is only a material contributing factor to the disability determination if the remaining limitations would not be disabling.[123]

In this case, the ALJ found Plaintiff's alcohol use disorder and related physical and mental impairments severe.[124]  He noted that he analyzed Plaintiff's physical and mental impairments "through the framework of alcohol abuse."[125]  Although it is unclear what the

---

[119] Docket 11 at 17–19.

[120] Docket 13 at 2.  The Court notes that Plaintiff did not respond to the Commissioner's response in her Reply brief.  *See* Docket 14.

[121] 20 C.F.R. § 416.935(a).

[122] 20 C.F.R. § 416.935(b)(1).

[123] 20 C.F.R. § 416.935(b)(3).

[124] A.R. 19–20.

[125] A.R. 23.

Case No. 5:23-cv-00001-JMK, *Toni M. v. O'Malley*
Decision and Order
Page 29 of 31

ALJ meant by "the framework of alcohol abuse," the ALJ did not find Plaintiff disabled and consequently, he was not required to engage in a materiality analysis.

In sum, the ALJ was not required to engage in an analysis to determine if Plaintiff's alcohol addiction was a material contributing factor to her disability determination. However, on remand, the ALJ should explain his or her reasoning.

## E.    Scope of Remand

Plaintiff requests that the Court reverse the SSA's final decision and remand for further proceedings.[126]  The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court.[127]  When prejudicial error has occurred, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation[.]"[128]  For the above reasons, the proper remedy in this case, is to remand for further administrative proceedings, including a new hearing and new ALJ decision, consistent with this Decision and Order.

## V.    ORDER

The Court, having carefully reviewed the administrative record, finds that the ALJ's determinations are not free from legal error and not supported by substantial evidence.  Accordingly, IT IS ORDERED that Plaintiff's request for relief at Docket 11 is GRANTED and the Commissioner's final decision is VACATED and REMANDED for

---

[126] Docket 11 at 19.

[127] *Garrison,* 759 F.3d at 1019.

[128] *Dominguez v. Colvin,* 808 F.3d 403, 407 (9th Cir. 2015) (quoting *Treichler,* 775 F.3d at 1099).

Case No. 5:23-cv-00001-JMK, *Toni M. v. O'Malley*
Decision and Order
Page 30 of 31

further proceedings, pursuant to sentence four of 42 USC § 405(g) and consistent with this Decision and Order.

The Court DIRECTS the Clerk of this Court to enter judgment in favor of Plaintiff and close this case accordingly.

DATED this 27th day of February 2024, at Anchorage, Alaska.

*/s/ Joshua M. Kindred*
JOSHUA M. KINDRED
UNITED STATES DISTRICT JUDGE